ANSVAR AMERICA INSURANCE COMPANY, Plaintiff-Appellant, v. GULLI HALLBERG, as Special Adm'r of the Estate of William Hallberg, Defendant-Appellee.

First District (2nd Division)   No. 1—90—0636

Opinion filed January 15, 1991.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge and Martin D. Hoke, of counsel), for appellant.

James E. Ocasek and Robert J. Cooney, Jr., both of Cooney & Conway, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Ansvar America Insurance Company (Ansvar) filed a declaratory judgment action against defendant William Hallberg (Hallberg) seeking a determination of insurance coverage. Both parties filed motions for summary judgment. The circuit court granted Hallberg's motion and denied Ansvar's. Ansvar now appeals and presents for our determination whether the insurance policy provision in this case entitled "Additional Duty," which required prompt forwarding of suit papers, was a condition precedent to the insurer's obligation to provide coverage to an additional insured passenger seeking underinsured motorist coverage. We conclude that it was not and affirm the judgment of the circuit court.

On June 24, 1984, Hallberg was a passenger in an automobile owned and operated by Thomas Bergus. Bergus' auto was involved in a collision with two other vehicles, operated by Oh Kyong Kim and Dennis O'Dea. Bergus was insured by Ansvar under a policy which was in effect on the date of the collision. That policy included underinsured motorist coverage.

Ansvar sent a letter to Hallberg on July 17, 1984, informing him that it was the insurer for Bergus and that it would pay for his medical expenses. It sent him another letter on November 19, 1984, stating that it would reimburse him to the extent of the policy, which was $7,500. On four separate occasions over the next 10 months, Hallberg wrote Ansvar complaining that his medical expenses had not been paid as promised. Hallberg then filed a complaint at law against Kim on February 5, 1985. He amended it on November 12, 1985, to add O'Dea as a defendant.

On June 29, 1986, Ansvar filed a subrogation claim against Kim as subrogee of Bergus in the circuit court's municipal division. That claim was dismissed on July 22 because an identical claim was pending in the law division. Hallberg's complaint against Kim was eventually dismissed with prejudice on July 24, 1986, pursuant to a settlement agreement awarding Hallberg Kim's insurance policy limit.

Hallberg's attorney then sent a letter to Ansvar on January 14, 1987, advising that he represented Hallberg and making a demand for

medical payments under the Bergus policy. The letter included proof of loss indicating settlement with Kim. Pursuant to that letter, Hallberg received $7,500 under the medical payments coverage portion of the Bergus policy. On February 17, 1987, Hallberg's attorney notified Ansvar by letter of his underinsured motorist claim under the Bergus policy. Ansvar responded on March 17, 1987, that the underinsured motorist claim was premature because O'Dea's policy limit had not yet been received; Hallberg was told that once the policy limit had been received, he was to again notify Ansvar.

O'Dea's attorney then offered Hallberg $1,000 to avoid future litigation costs, but maintained that the suit against O'Dea was frivolous and threatened to file a motion for sanctions against Hallberg and his attorney. Hallberg's attorney wrote Ansvar on August 13, 1987, notifying it of the O'Dea settlement offer and requesting its opinion.

Ansvar filed a petition to intervene in Hallberg's lawsuit on August 24, 1987. On September 11, 1987, Ansvar's attorney informed Hallberg's attorney that it had been retained to evaluate the claim for underinsurance coverage and to give advice on the O'Dea offer. It stated that it would give notice within 14 days as to whether underinsurance coverage existed. No such notice was ever given. On June 3, 1988, Hallberg's attorney notified Ansvar that he had accepted O'Dea's offer and that he had settled the case on May 24, 1988.

Ansvar filed a complaint for declaratory judgment against Hallberg on July 11, 1988, seeking a determination of coverage. It alleged that its underinsured motorist policy did not apply to Hallberg because he failed to notify it or send legal papers to it, as directed by the policy provisions. Hallberg filed a motion for summary judgment and Ansvar filed a cross-motion. Following a hearing on February 2, 1990, Hallberg's motion was granted and Ansvar's was denied. Ansvar now appeals the circuit court's order.

Ansvar contends that the "Additional Duty" section of its insurance policy created a condition precedent which Hallberg failed to fulfill. Hallberg maintains that the provision was not a condition precedent to payment.

Part H of the policy begins on page 9 and contains what is referred to as "Other Coverages." Listed in this section are several paragraphs entitled "Towing and Road Service," "Rental Expense," "Underinsured Motorist Coverage," "Exclusions," "Limit of Liability," "Other Insurance," and "Arbitration." Following these, at the very bottom of page 10, is the "Additional Duty" provision. It states:

"Any person seeking coverage under this endorsement must also promptly send us copies of the legal papers if a suit is brought."

A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform. (*Kilianek v. Jung K. Kim* (1989), 192 Ill. App. 3d 139, 548 N.E.2d 598; *In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 327 N.E.2d 317.) Like other contracts, insurance contracts are to be construed according to the sense and meaning of the terms which the parties have employed, and if they are free from ambiguity, their terms are to be understood in their plain, ordinary, and popular sense. *Smiley v. Estate of Toney* (1968), 100 Ill. App. 2d 271, 241 N.E.2d 116.

Ansvar takes the position that "additional duty" means "condition precedent." After reviewing the insurance policy as a whole, we disagree and conclude that Ansvar is creating an ambiguity out of otherwise unambiguous terms. Where a party claims that his own ambiguous language constitutes a condition precedent to his performance, he is not entitled to such a favorable construction unless it is established that the parties intended to create a condition at the time of contracting. *South Division Credit Union v. Deluxe Motors, Inc.* (1976), 42 Ill. App. 3d 219, 355 N.E.2d 715.

As a general rule of contract law, an ambiguous provision in a contract will be construed against the party who prepared the contract. This is because it is the maker who chose the words to be used and he is therefore more responsible for the existence of the ambiguity. (*Brown v. City of Pekin* (1984), 129 Ill. App. 3d 46, 472 N.E.2d 77; *Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 456 N.E.2d 298; *Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 405 N.E.2d 351.) Thus, the contract will be construed most strongly against him. *Dr. Charles W. Smith III, Ltd. v. Connecticut General Life Insurance Co.* (1984), 122 Ill. App. 3d 725, 462 N.E.2d 604.

In this case, Ansvar seeks a construction which the contract simply does not support. Since Ansvar was the maker of the contract, any ambiguity will be construed against it. Ansvar is responsible for the words it chose. Therefore, the additional duty will be interpreted as just that and nothing more. An extension of its meaning is unwarranted.

Ansvar cites a number of cases in support of its contention that the additional duty is actually a condition precedent. (*Kilianek v. Jung K. Kim* (1989), 192 Ill. App. 3d 139, 548 N.E.2d 598; *Illinois*

*Insurance Guaranty Fund v. Lockhart* (1987), 152 Ill. App. 3d 603, 504 N.E.2d 857; *Lyntel Products, Inc. v. Alcan Aluminum Corp.* (1981), 107 Ill. App. 3d 176, 437 N.E.2d 653; *In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 327 N.E.2d 317.) Ansvar's reliance on these cases is misplaced. In each one, there were factual distinctions which made it obvious that the provision in question was an unambiguous condition precedent. There is no such evidence in this case. The only time-related language is the word "promptly," which can be interpreted to relate to the time when a person is making the claim for underinsurance coverage.

Furthermore, the placement of the provision is curiously inconspicuous. It is located at the very end of the section and is not set off by any kind of distinctive heading. If Ansvar had wanted the notice provision to act as a condition precedent to its obligation to provide coverage, it could have made it more explicit in substance and form. For example, it could have provided a specific time period in which notification must occur. Instead, it simply created an additional duty which did not at all imply that recovery was conditioned upon fulfillment of that duty.

■ Parties to an insurance contract may incorporate such lawful provisions therein as they choose, and courts should construe and enforce the contract as made. Courts should not, however, under the cloak of construction, make a new contract for the parties. (*Smiley v. Estate of Toney* (1968), 100 Ill. App. 2d 271, 278, 241 N.E.2d 116, 120.) In this case, Ansvar chose to create an additional duty rather than a condition precedent. It cannot now escape its obligation by attempting to recharacterize its own words. The circuit court properly refused to construe the provision as a condition precedent and correctly ruled that Hallberg was entitled to recover from Ansvar.

Accordingly, the judgment entered by the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC* and SCARIANO, JJ., concur.

---

*Justice Bilandic participated in this decision prior to his election to the Illinois Supreme Court.