BARTER EXCHANGE, INC., OF CHICAGO, *et al.*, Plaintiffs-Appellants, v. BARTER EXCHANGE, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—91—0499

Opinion filed October 28, 1992.

Frank M. Pawlak and Clinton J. Wesolik, both of Burke, Wilson & McIlvaine, of Chicago, for appellants.

Lee N. Abrams, John M. Touhy, Anne K. Lewis, and Beth Eiseman Grey, all of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Barter Exchange, Inc., of Chicago (Chicago Barter Exchange), and T.A.H. Companies, Inc., d/b/a Louisville Barter Exchange (TAH), filed a complaint against defendant, Barter Exchange, Inc., of Texas (Texas Barter Exchange). Plaintiffs, by their complaint, sought to rescind their respective franchise agreements with defendant on the grounds that defendant failed to comply with provisions governing the registration and sale of franchises in the Franchise Disclosure Act of 1987 (Franchise Disclosure Act) (Ill. Rev. Stat. 1987, ch. 121½, pars. 1710, 1726), and the Sale of Business Opportunities Act (Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987)). Defendant moved to compel arbitration pursuant to section 2(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 102(a)). The trial court granted defendant's motion and stayed the proceedings pending arbitration. Plaintiffs now appeal that order pursuant to Illinois Supreme Court Rule 307(a) (134 Ill. 2d R. 307(a)), and a notice of interlocutory appeal.

The issue before this court for review is whether the trial court properly granted defendant's motion to compel arbitration. We reverse and remand.

On or about September 30, 1988, Chicago Barter Exchange and Texas Barter Exchange entered into a written franchise agreement (Chicago contract) whereby Texas Barter Exchange granted Chicago Barter Exchange the right to operate a franchise in the Chicago area selling certain services developed by Texas Barter Exchange. Texas Barter Exchange was registered with the State of Illinois, but it allowed its registration to lapse as of September 29, 1988. Texas Barter

Exchange was not registered with the State of Illinois on or after September 30, 1988.

In count I of plaintiffs' complaint, Chicago Barter Exchange sought to rescind the Chicago contract by bringing an action for a declaratory judgment seeking rescission and damages in an amount in excess of $50,000. Chicago Barter Exchange sought rescission of the Chicago contract on the basis that the contract was void and unenforceable due to Texas Barter Exchange's failure to register the franchise with the Attorney General of Illinois as required by section 10 of the Franchise Disclosure Act. Ill. Rev. Stat. 1987, ch. 121½, par. 1710.

On or about September 18, 1989, Louisville Barter Exchange and Texas Barter Exchange entered into a franchise agreement (TAH contract), which was substantially similar to the Chicago contract. Texas Barter Exchange never registered with the Attorney General of the State of Kentucky. TAH, d/b/a Louisville Barter Exchange, brought an action to rescind the TAH contract pursuant to section 307.805 of the Sale of Business Opportunities Act (Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987)), in count II of plaintiffs' complaint on the basis that Texas Barter Exchange was not registered with the Attorney General of Kentucky to sell or offer to sell a franchise in Kentucky at the time the parties entered into the TAH contract, thus rendering the contract void and unenforceable.

On September 20, 1990, Texas Barter Exchange submitted a request to Chicago Barter Exchange demanding arbitration of the dispute. Chicago Barter Exchange refused the demand for arbitration. Texas Barter Exchange did not answer the complaint but instead filed a motion to compel arbitration and stay the proceedings as to count I, and to dismiss count II pursuant to section 2—619 of the Code of Civil Procedure. Ill. Rev. Stat. 1987, ch. 110, par. 2—619.

On November 7, 1990, TAH obtained a certificate of authority to transact business in Illinois from the Illinois Secretary of State. TAH was therefore entitled to bring suit in Illinois courts pursuant to section 13.70 of the Business Corporation Act of 1983. Ill. Rev. Stat. 1987, ch. 32, par. 13.70.

Although Texas Barter Exchange acknowledged that it failed to register with the Attorneys General of Illinois and Kentucky, it maintained that the trial court was still required to stay the proceedings and compel arbitration of the claims pursuant to article 12 of the Chicago and TAH contracts. Said article provides:

"Any controversy or claim arising out of or related to this Agreement or any breach hereof shall be submitted to binding

arbitration before and in accordance with the rules of the American Arbitration Association ***. Any arbitration proceeding shall be conducted in Austin, Texas."

On January 14, 1991, the trial court granted Texas Barter Exchange's motion to compel arbitration as to both plaintiffs and stayed the proceedings pending completion of arbitration. The trial court stated as follows:

"[I]t is the belief of the court that in the instant case, *** the party seeking to avoid the contract apparently sought to avoid the contract only after the dispute had been in [progress] for a long period of time and after a relationship of a year and a half had taken place.

***

So I rule that the contract is voidable, not void, that not having exercised their right earlier, it seems to me that they are foreclosed now not to submit the dispute to arbitration as they originally agreed upon."

On January 25, 1991, Texas Barter Exchange filed a demand for arbitration. On February 11, 1991, Chicago Barter Exchange and TAH moved to stay the January 14 order pending an interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a). (134 Ill. 2d R. 307(a).) The trial court granted the motion, effectively staying the necessity of the parties proceeding to arbitration pending the resolution of this appeal.

Plaintiffs maintain that the trial court's order compelling arbitration should be reversed and the cause remanded to the trial court. Plaintiffs allege that the trial court improperly granted defendant's motion to compel arbitration because the trial court erroneously considered factors extraneous to the record, and because the issue of whether the parties entered into enforceable contracts is not arbitrable. Plaintiff Chicago Barter Exchange contends that it is entitled to have the trial court determine whether the Chicago contract is void and unenforceable pursuant to the Franchise Disclosure Act. (Ill. Rev. Stat. 1987, ch. 121½, pars. 1710, 1726.) Similarly, plaintiff TAH contends that it is entitled to have the trial court determine whether the TAH contract is void and unenforceable pursuant to the Sale of Business Opportunities Act. Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987).

Defendant maintains that the trial court's order compelling arbitration should be affirmed for the following reasons: (1) plaintiffs waived the issue of whether the two franchise agreements should be voided; (2) the question of whether the Chicago and TAH contracts are voidable is not a proper issue for this court to address since it

goes to the merits of this case; (3) the trial court's decision may be affirmed by this court on any grounds; (4) a suit to rescind a contract does not automatically invalidate an arbitration clause contained in a contract; (5) public policy strongly favors arbitration and public policy does not oppose arbitration outside of the State of Illinois; (6) arbitration is appropriate in this case; and (7) plaintiffs' allegation that the trial court considered matters extraneous to the record is improper and irrelevant.

As this is an interlocutory appeal, the sole issue before this court for review is whether there was a showing sufficient to sustain the order of the trial court granting defendant's motion to compel arbitration. (See *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 850, 467 N.E.2d 932, 936.) We find that no such showing was made in the present case.

Initially, defendant alleges that plaintiffs waived their right to appellate review of the issues of whether the Chicago and TAH contracts should be voided. The doctrine of waiver is not applicable in this case. Defendant's argument that the trial court did not consider the merits of the complaint ignores the factors which the trial court relied upon when it granted defendant's motion to compel arbitration. Plaintiffs have brought an action to rescind their contracts on the basis that defendant violated section 10 of the Franchise Disclosure Act and section 367.805 of the Sale of Business Opportunities Act. (Ill. Rev. Stat. 1987, ch. 121½, par. 1710; Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987).) The complaint itself calls into question the validity and the voidability of the contracts. The trial court's decision to compel arbitration is based upon its finding that the contracts are voidable and not void. The trial court stated:

"I rule that the contract is voidable, not void, that not having exercised their right earlier, it seems to me that they are foreclosed now not to submit the dispute to arbitration as they originally agreed upon."

In addition, the trial court's conclusion that plaintiffs were "foreclosed" from objecting to arbitration on the basis of their course of performance subsequent to contracting with defendant demonstrates that the trial court considered plaintiffs' right to rescind their respective contracts. The fact that the trial court considered plaintiffs' right to rescission entitles them to review of the trial court's ruling. We must determine whether there was a sufficient showing for the trial court's order compelling arbitration, and this requires us to address the question of whether the contracts are void or voidable.

■ First, we will address plaintiffs' allegation that the trial court erred when it granted defendant's motion to compel arbitration because the court considered factors extraneous to the record. We find that the trial court erred when it considered factors extraneous to the record. Although neither plaintiffs' complaint nor defendant's motion to compel arbitration raised an issue concerning the course of performance under the Chicago contract, and defendant did not argue that the doctrines of *laches* and waiver apply with respect to this question, the trial court concluded that plaintiffs were "foreclosed" from objecting to arbitration, "not having exercised their right earlier," because they sought to avoid the contract after a long dispute. The Franchise Disclosure Act does not limit a franchisee's right to object to arbitration of a dispute with a franchisor. (Ill. Rev. Stat. 1987, ch. 121½, par. 1701 *et seq.*) Accordingly, we will not foreclose plaintiffs from invoking the statute.

■ We will now address plaintiffs' allegation that the question of whether the parties entered into enforceable contracts is arbitrable. We acknowledge that arbitration is a favored method of dispute resolution in Illinois. (Ill. Rev. Stat. 1987, ch. 10, par. 102(a); *Kilianek v. Kim* (1989), 192 Ill. App. 3d 139, 142, 548 N.E.2d 598, 600; *Diersen v. Joe Keim Builders, Inc.* (1987), 153 Ill. App. 3d 373, 377, 505 N.E.2d 1325, 1327.) In addition, section 4 of the Franchise Disclosure Act permits arbitration in a forum outside of Illinois where the franchise agreement designates a jurisdiction or forum for arbitration outside of this State. Ill. Rev. Stat. 1987, ch. 121½, par. 1704.

■ Sections 10 and 26 of the Franchise Disclosure Act (Ill. Rev. Stat. 1987, ch. 121½, pars. 1710, 1726), section 367.805 of the Sale of Business Opportunities Act (Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987)), and Illinois case law, however, mandate that arbitration is not the appropriate means of resolving the dispute in the present case. The issue of whether the parties have entered into an enforceable contract is not arbitrable because the question of whether a contract existed is an issue of law determinable only by a court. *Kilianeck*, 192 Ill. App. 3d at 142-43, 548 N.E.2d at 600-01; *Kaiser-Ducett Corp. v. Housewrights, Inc.* (1977), 48 Ill. App. 3d 589, 592, 363 N.E.2d 97, 99.

■ Where a contract contains a condition precedent, the contract is neither enforceable nor effective until the condition precedent is performed or an agreed-upon contingency occurs. (*Kilianeck*, 192 Ill. App. 3d at 142-43, 548 N.E.2d at 601.) In the present case, the Franchise Disclosure Act must be deemed a part of the contract between the parties. (See *Kilianeck*, 192 Ill. App. 3d at 142, 548 N.E.2d at

600; *Kaiser-Ducett,* 48 Ill. App. 3d at 592, 363 N.E.2d at 99.) As such, sections 10 and 26 of the Franchise Disclosure Act, and section 367.805 of the Sale of Business Opportunities Act, are conditions precedent to the effectiveness and enforceability of the Chicago and TAH contracts. Section 26 of the Franchise Disclosure Act specifically authorizes a franchisee to sue a franchisor for rescission of a franchise agreement where the franchisor violates section 10 of the Franchise Disclosure Act. Section 10 of the Franchise Disclosure Act makes the following provision:

> "§10. Registration and Annual Report. No franchisor may sell or offer to sell a franchise in this State if (1) the franchise is domiciled in this State or (2) the offer of the franchise is made or accepted in this State and the franchise business is or will be located in this State, unless the franchisor has registered the franchise with the Administrator by filing such form of application and disclosure statement as the Administrator may by rule or order require." (Ill. Rev. Stat. 1987, ch. 121½, par. 1710.)

Section 26 provides as follows:

> "§26. Private civil actions. Any person who offers or sells a franchise in violation of this Act shall be liable to the franchisee who may sue for damages caused thereby. *In the case of a violation of Section 5, 6, 10, 11 or 15 of the Act, the franchisee may also sue for rescission.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 121½, par. 1726.)

Similarly, section 367.805 of the Sale of Business Opportunities Act provides:

> "§367.805 Registration of persons engaged in sale of business opportunities.
>
> (1) It is unlawful for any person to engage in the sale of business opportunities unless prior to the offering the offeror has registered with the division ***." Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987).

■ The Chicago and TAH contracts were not binding upon plaintiffs, as the condition precedent of registration of the franchise was not performed or satisfied by defendant. Defendant concedes that it violated section 10 of the Franchise Disclosure Act by failing to keep its registration with the Illinois Attorney General current, and that it violated section 367.805 of the Sale of Business Opportunities Act by failing to register with the Attorney General of Kentucky. (Ill. Rev. Stat. 1989, ch. 121½, par. 1710; Ky. Rev. Stat. Ann. §367.805 (Baldwin 1987).) Plaintiff Chicago Barter Exchange is entitled to the rem-

edy of rescission on the basis of defendant's failure to maintain its registration with the Attorney General of Illinois pursuant to sections 10 and 26 of the Franchise Disclosure Act. (Ill. Rev. Stat. 1987, ch. 121½, pars. 1710, 1726.) Plaintiff TAH is entitled to rescission based upon the fact that section 367.805 of the Sale of Business Opportunities Act is a condition precedent to the enforceability of the TAH contract. The effect of the trial court's decision was to deny plaintiffs the opportunity to obtain a statutory remedy to which they are entitled. The trial court therefore erred when it granted defendant's motion to compel arbitration, because the issue of whether plaintiffs are entitled to rescission of their respective contracts on the grounds that the agreements are void and unenforceable is not arbitrable.

Furthermore, the present case is factually analogous to *My Pie International, Inc. v. Debould, Inc.* (7th Cir. 1982), 687 F.2d 919. Although *My Pie International, Inc.,* is a Federal case which did not involve a motion to compel arbitration, we believe that the court's treatment of the defendant's violation of the Franchise Disclosure Act in that case is noteworthy and relevant to the present case. In *My Pie International, Inc.,* the franchisor filed an action for breach of the franchise agreement against two of its franchisees. (*My Pie International, Inc.,* 687 F.2d at 921.) Just as plaintiffs in the present case have cited defendant's failure to comply with the Franchise Disclosure Act as grounds for rescission of the franchise agreements, the franchisees in *My Pie International, Inc.,* argued that their franchise agreements were void on the basis of the franchisor's failure to tender a franchise disclosure statement as required by the then effective Franchise Disclosure Act (Ill. Rev. Stat. 1981, ch. 121½, pars. 703, 704(2), 705, 721(2)). (*My Pie International, Inc.,* 687 F.2d at 922.) The Seventh Circuit held that the franchisor's failure to disclose the requisite statement violated the Franchise Disclosure Act, and that the franchisees were therefore entitled to rescind their franchise agreements. (*My Pie International, Inc.,* 687 F.2d at 923.) The court further held that the franchisor had no rights under the contracts because the franchise agreements were "voidable and voided" as a result of defendant's violation of the Franchise Disclosure Act. (*My Pie International, Inc.,* 687 F.2d at 925.) Upon applying *My Pie International, Inc.,* to the present case, we find that defendant's failure to register in compliance with the Franchise Disclosure Act rendered the Chicago contract void. Defendant may not compel arbitration under a void contract.

Finally, as a matter of public policy, the trial court should not have ordered an arbitration panel in Texas to resolve a dispute arising out

of a Texas corporation's failure to comply with an Illinois law enacted for the purpose of protecting Illinois residents. (See Ill. Rev. Stat. 1987, ch. 121½, par. 1702.) The Franchise Disclosure Act was enacted in order to remedy the perceived evil of nondisclosure in franchise purchases, and as such, must be liberally construed in order to effectuate the legislature's intent. (*Salkeld v. V.R. Business Brokers* (1989), 192 Ill. App. 3d 663, 672-73, 548 N.E.2d 1151, 1156-57.) If we allowed a franchisor to compel arbitration in a case such as this one, we would permit said franchisor to circumvent a statutory scheme enacted by our legislature. We therefore must require that defendant comply with the Franchise Disclosure Act. If we allowed defendant in the present case to prevail, we would create an incentive heretofore for unscrupulous franchisors to decline to register their franchises with the Illinois Attorney General, incorporate out-of-State arbitration clauses in franchise agreements, and then sell franchises to Illinois residents. Then, when a franchisee in plaintiff Chicago Barter Exchange's position would seek to exercise its statutory right to rescind the franchise agreement, unscrupulous franchisors could invoke the arbitration agreement, compel arbitration, and remove the case to their home States for resolution. This would deny Illinois courts the opportunity to interpret, construe and apply the Franchise Disclosure Act to foreign franchisors. Accordingly, we conclude that the trial court erred when it granted defendant's motion to compel arbitration as there was not a showing sufficient to sustain the trial court's order.

For the aforementioned reasons, we reverse the judgment of the trial court and remand this cause for further proceedings consistent therewith.

Reversed and remanded.

TULLY and McCORMICK, JJ., concur.