(No. 97704.—

ERIC JENSEN, Appellee, v. QUIK INTERNATIONAL *et al.*, Appellants.

*Opinion filed November 18, 2004.*

Fredric A. Cohen and John A. Hughes, of Piper Rudnick, L.L.P., of Chicago, for appellants.

Marc N. Blumenthal, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Eric Jensen, sought to rescind a franchise agreement with Quik International (Quik) pursuant to section 26 of the Franchise Disclosure Act of 1987 (Act) (815 ILCS 705/5 (West 2002)) on the grounds that Quik was not registered as a franchise with the Illinois Attorney General's office, as required by sections 5 and 10 of the Act. Quik sought to stay the litigation in the circuit court of Cook County and compel arbitration of Jensen's claim pursuant to an arbitration clause in the franchise agreement. The appellate court held that because compliance with the registration requirement of the Act was a condition precedent to an enforceable contract, the franchise agreement was not binding on Jensen, and he was not required to submit his claim to arbitration. 345 Ill. App. 3d 713. For the following reasons, we reverse the decisions of the circuit and appellate courts and remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

Jensen entered into a franchise agreement with Quik, a Nevada franchisor, whereby Quik granted Jensen the right to operate a franchise in Illinois. The franchise

agreement contained an arbitration clause, which provided that:

"[A]ny controversy or claim arising out of or relating to this Agreement or its breach, including without limitation, any claim that this Agreement or any of its parts are invalid, illegal or otherwise voidable or void, shall be submitted to arbitration ***."

Quik subsequently notified Jensen that it was in violation of the Act because its registration as a franchise with the Illinois Attorney General's office had expired at the time it entered into the franchise agreement with Jensen. The notice also informed Jensen of his rights under the Act, including the right to sue for damages and/or rescission of the franchise agreement.

Jensen filed a complaint against Quik, its president, and its chief executive officer, seeking damages and rescission of the franchise agreement. Count I alleged that Quik had violated sections 5 and 10 of the Act by failing to register as a franchise in Illinois. Count II alleged that Quik violated section 6 of the Act by making incomplete and misleading disclosures. Count III alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*. (West 2002)).

Quik filed a motion to stay the litigation pending arbitration, then filed an arbitration demand in Nevada pursuant to section 3 of the Federal Arbitration Act (FAA) (9 U.S.C. § 3 (2000)). Jensen filed a cross-motion to stay arbitration pending the circuit court's ruling to stay the litigation. The circuit court denied Quik's motion to stay and granted Jensen's motion to stay arbitration. Quik appealed from both orders pursuant to Rule 307(a)(1), arguing that even though Quik was not registered as a franchisor, Jensen's claim had to be submitted to arbitration because the Federal Arbitration Act governed the agreement and required enforcement of the arbitration clause, superceding state law.

The appellate court affirmed, holding that the issue of whether the parties had entered into an enforceable contract is not arbitrable because the question of whether a contract existed is a question of law for the court. 345 Ill. App. 3d 713. Quik appeals.

Prior to addressing the merits of Quik's arguments, we set forth the relevant provisions of the Act. Section 5 of the Act provides in pertinent part:

"It is unlawful for any person to offer or sell any franchise required to be registered under this Act unless the franchise has been registered under this Act or is exempt under this Act." 815 ILCS 705/5(1) (West 2002).

Section 10 of the Act provides:

"No franchisor may sell or offer to sell a franchise in this State if (1) the franchisee is domiciled in this State or (2) the offer of the franchise is made or accepted in this State and the franchise business is or will be located in this State, unless the franchisor has registered the franchise with the Administrator[1] by filing such form of notification and disclosure statement as required under Section 16." 815 ILCS 705/10 (West 2002).

Section 26 provides that:

"Any person who offers, sells, terminates, or fails to renew a franchise in violation of this Act shall be liable to the franchisee who may sue for damages caused thereby. *** In the case of a violation of section 5, 6 [fraudulent practices], 10, 11 [amendment of disclosure statement], or 15 [escrow of franchise fees and surety bonds] of the Act, the franchisee may also sue for rescission." 815 ILCS 705/26 (West 2002).

Because Jensen was domiciled in Illinois, the offer was made in Illinois, and Jensen operated the franchise business from his home in Illinois, Quik was required by section 10 of the Act to be registered with the Illinois Attorney General in order to enter into a franchise agreement with Jensen. Because Quik was not registered with

---

[1]Section 3(19) of the Act defines "Administrator" as the Illinois Attorney General.

the Attorney General's office at the time of the sale, as required by sections 5 and 10, Jensen is entitled, pursuant to section 26, to sue for damages and seek rescission of the franchise agreement. As noted above, the franchise agreement provides that all claims, including those that the agreement is illegal or otherwise invalid, must be submitted to arbitration. The question becomes, then, whether Jensen was entitled to pursue his statutory remedy of rescission in state court, or whether he is required by the terms of the franchise agreement to pursue it before an arbitrator. Jensen maintains, and the appellate court found, that he can maintain his statutory claim for rescission in state court because no enforceable contract, and therefore no arbitration clause, existed as a result of Quik's failure to fulfill the condition precedent of registration with the Attorney General's office.

Quik argues that the FAA governs its motion to stay the litigation because: (1) the motion was brought pursuant to section 3 of the FAA; (2) the franchise agreement specifically provides that all issues relating to arbitration or enforcement of the arbitration clause will be governed by the FAA; and (3) as a contract "evidencing a transaction involving commerce" (9 U.S.C. § 2 (2000)), the FAA applies as a matter of law. Citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 18 L. Ed. 2d 1270, 1277, 87 S. Ct. 1801, 1806 (1967), Quik contends that under the FAA a court may consider only issues relating to the making and performance of the agreement to arbitrate, not the enforceability or validity of the contract containing the arbitration clause as a whole, and that questions concerning the validity and enforceability of the contract are for the arbitrator, not the courts, to decide. When presented with a motion to stay litigation pending arbitration under section 3 of the FAA, the court's inquiry is limited to whether an agreement to arbitrate exists and whether it encompasses the issue in dispute. If the court finds that an agreement to arbitrate

exists and the issue presented is within the scope of that agreement, a stay under section 3 of the FAA is mandatory.

Quik contends that there is no dispute that the arbitration agreement exists or that it encompasses the claims alleged in Jensen's complaint. Further, Jensen's complaint contains no allegations that the arbitration provision, as opposed to the franchise agreement as a whole, was procured through fraud, violated the Act, or is otherwise invalid, void, or voidable. Thus, Quik maintains, the stay was mandatory under section 3 of the FAA.

Quik misapprehends the holding of the appellate court in this case. The appellate court in the present case relied on its previous decision in *Barter Exchange, Inc. of Chicago v. Barter Exchange, Inc.*, 238 Ill. App. 3d 187 (1992). In *Barter Exchange*, Illinois and Kentucky franchisees sought to rescind their franchise agreements because the defendant franchisor allowed its registration to expire before the franchise agreements were executed. The court held that Illinois and Kentucky laws requiring a franchisor to obtain a registration to do business within the state must be deemed part of the respective franchise agreements and that, as implied terms of the contract, those laws established conditions precedent to the effectiveness and enforceability of the contracts. Because the franchisor failed to satisfy the condition precedent of registration, the court held, the franchise contracts were not binding on the franchisees and the contracts were subject to rescission. Rescission implicitly invalidated the arbitration agreement and without an arbitration agreement, the franchisees were not required to submit their claims to arbitration. *Barter Exchange*, 238 Ill. App. 3d at 192-94.

As in *Barter Exchange*, the gist of the appellate court's holding in the present case is that because Quik

failed to satisfy the condition precedent of registration, there was no enforceable franchise agreement and, therefore, no arbitration clause. In the absence of an agreement to arbitrate, the FAA does not apply.

As the appellate court in this case noted, other districts of the appellate court have rejected *Barter Exchange*'s "condition precedent" analysis. In *Cusamano v. Norrell Health Care, Inc.*, 239 Ill. App. 3d 648 (1992), the franchisee sued to rescind the franchise agreement on the ground that the franchisor failed to provide her with a disclosure statement, as required by section 5(2) of the Act. She also alleged that the franchisor fraudulently induced her to sign the franchise agreement by providing her with a commission statement that grossly overestimated the amount of expected earnings. The franchisor filed a motion to dismiss, arguing that the franchisee was required to submit her claim to arbitration pursuant to an arbitration clause in the franchise agreement. The trial court granted the motion and the franchisee appealed, arguing that she could not submit her claim to arbitration because a Georgia arbitrator would have no authority to enforce Illinois statutory remedies.

The appellate court held that the franchisee was required to submit her statutory claim of precontractual material misrepresentation to arbitration. In reaching its decision, the court in *Cusamano* explicitly rejected *Barter Exchange*'s holding that compliance with the Act created a condition precedent to a franchise contract. The *Cusamano* court reasoned that the remedy of rescission presumes that a valid contract existed. The court held that because a suit brought under the Act to rescind a franchise contract does not challenge the existence of the contract, the question of rescission can go to the arbitrator. The Act does not provide grounds on which a plaintiff-franchisee can deny the existence of the contract, the court stated; rather, it provides grounds on which a

plaintiff-franchisee can rescind the contract. When parties choose arbitration in their contract, the party later seeking to avoid arbitration should not be allowed to do so by merely alleging that no contract exists. The court concluded that the result in *Barter Exchange* could effectively end arbitration of contract disputes in Illinois because almost any plaintiff can find some theory upon which to allege that no contract existed, thereby avoiding arbitration.

In *Jacob v. C&M Video, Inc.*, 248 Ill. App. 3d 654 (1993), franchisees of C&M filed suit alleging that C&M had committed common law fraud, violated the disclosure provisions of the Act, and breached the franchise agreements. C&M filed a motion to dismiss, arguing that the franchisees were required to submit their claims to arbitration pursuant to an arbitration clause in the franchise agreement. The trial court denied the motion to dismiss, and C&M appealed, arguing that enforcement of the arbitration clause would deny them the protection of the Act. They relied on *Barter Exchange*. The court in *Jacob* disagreed with the court's decision in *Barter Exchange* that the question of whether a contract exists can only be decided by the courts. *Jacob*, 248 Ill. App. 3d at 660.

We agree with the conclusion reached by the courts in *Cusamano* and *Jacob*. Both the language of the Act itself and public policy considerations clearly compel rejection of *Barter Exchange*'s holding that registration is a condition precedent to an enforceable franchise agreement. First, the nature of the remedy provided in section 26 demonstrates that the legislature did not intend registration to be a condition precedent to an enforceable franchise agreement. The legislature did not provide that franchise agreements entered into in violation of sections 5 and 10 were invalid and unenforceable. Instead, the legislature chose to provide franchisees with

the remedy of rescission. "Rescission" is defined as "[a] party's unilateral unmaking of a contract for a legally sufficient reason." Black's Law Dictionary 1332 (8th ed. 2004). As the court in *Cusamano* noted, rescission presumes the existence of an otherwise valid and enforceable contract. Had the legislature intended that a franchise agreement entered into in violation of sections 5 and 10 be unenforceable, it could have easily so provided.

Further, section 26 provides that where a person offers, sells, terminates or renews a franchise in violation of the Act, the franchisee "*may* sue for damages caused thereby" and in the case of a violation of section 5 or 10, "the franchisee *may* also sue for rescission." (Emphasis added.) 815 ILCS 705/26 (West 2002). In other words, section 26 gives the franchisee the *option* of seeking rescission of the franchise agreement where the franchisor was in violation of sections 5 and 10 at the time the franchise agreement was executed. The franchisee is not compelled to seek rescission, however, and it is conceivable that he might not wish to rescind the agreement. The franchisee may wish to retain the benefit of his bargain with the franchisor notwithstanding the fact that the franchisor is not registered with the Attorney General's office. To adopt the position taken by the appellate court in *Barter Exchange* and in the present case would deprive the franchisee of that option. (A franchisee's decision to forgo rescission would not mean that there are no consequences for a franchisor's failure to comply with the registration requirement of the Act, however. In addition to the private civil actions provided for in section 26, sections 22 and 24 provide the Attorney General with various enforcement mechanisms, including the option of seeking penalties of up to $50,000 per violation. 815 ILCS 705/22, 24 (West 2002).) Further, section 25 provides that willful violations of sections 5 and

10 are Class 2 felonies subjecting the franchisor to mandatory criminal prosecution. 815 ILCS 705/25 (West 2004).

Section 26 also provides:

> "No franchisee may sue for rescission under this Section 26 who shall fail, within 30 days from the date of receipt thereof, to accept an offer to return the consideration paid or to repurchase the franchise purchased by such person." 815 ILCS 705/26 (West 2002).

Section 27 provides:

> "No action shall be maintained under Section 26 of this Act *** unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of the facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Act, or 90 days after delivery to the franchisee of a written notice disclosing a violation, whichever shall first expire." 815 ILCS 705/27 (West 2002).

The time limits imposed by sections 26 and 27 on the franchisee's right to seek rescission further demonstrate that registration is not a condition precedent to an enforceable franchise agreement. If it were, expiration of the time limits set forth in these sections could result in a situation where a franchisee could not seek to rescind an unenforceable agreement. We do not believe the legislature intended such a patently absurd result.

Public policy considerations also compel us to reject the holding of *Barter Exchange*. Illinois public policy favors arbitration as a means of resolving disputes. 710 ILCS 5/2(a) (West 2002). Indeed, section 4 of the Act permits arbitration in a forum outside of Illinois where the franchise agreement so designates. 815 ILCS 705/4 (West 2002). The holding in *Barter Exchange* would undermine this policy by allowing the party seeking to avoid arbitration to do so by merely alleging that no contract existed. As the court in *Cusamano* noted, almost

any plaintiff can find some theory or claim upon which to allege that no contract existed, thereby avoiding arbitration. *Cusamano*, 239 Ill. App. 3d at 654.

We hold that the issue of whether Jensen is entitled to rescission of the franchise agreement with Quik on the grounds that Quik was in violation of sections 5 and 10 of the Act at the time the agreement was entered into is arbitrable pursuant to the arbitration clause in the franchise agreement.

Quik also argues that the appellate court erred in affirming the circuit court's grant of Jensen's motion to stay arbitration where Jensen failed to establish his entitlement to such relief. Given our disposition of Quik's prior argument, it is unnecessary to address this issue.

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*